# CIRCUIT COURT OF NORTHAMPTON COUNTY

Cynthia Lee Carneal

v.

Chesapeake Properties
and Kimberly M. Starr Wendell

April 24, 2006

Case No. (Law) 05CL043

BY JUDGE GLEN A. TYLER

The purpose of this letter is to decide the plaintiff's post verdict motion.

The essence of this case is as follows. Chesapeake Properties is a real estate brokerage proprietorship owned by the defendant, Starr. Plaintiff, Carneal, is a licensed real estate agent whose license was held by Starr, a licensed real estate broker. Their legal status was that Carneal was an independent contractor, and they had an oral contract for Carneal to procure listings from owners of real estate and secure contracts for them with purchasers. Carneal was one of several agents with Chesapeake Properties.

As the result of a personal dispute between Carneal and Starr, unrelated to their agency contract and the business of Chesapeake Properties, the contractual relationship of agent and broker was terminated. At the time of termination, or very shortly thereafter, there were eleven real estate sales contracts, pending closing and conveyance, for which Carneal was the listing and/or selling agent. The terms of their agent/broker contract included definite and specific percentages of the gross brokerage commission to which Carneal would be entitled upon closing and conveyance and upon payment of the gross commission to Chesapeake Properties.

After the termination of Carneal as an agent for Chesapeake Properties, the eleven transactions closed and the gross commissions were paid to Chesapeake, but Starr did not pay the established percentages of the gross commissions to Carneal.

Although Carneal alleges that she was "fired" by Starr, and Starr alleges that Carneal "quit," regardless of the cause of termination, Starr alleges that she does not pay post termination commissions to agents; she keeps them herself. Starr alleges that her "policy" of not paying post termination commissions was one of the terms of the parties' agent/broker contract.

Carneal sued for her commissions in an action at law for breach of contract.

At the conclusion of a four-day trial, the jury found for the plaintiff and awarded her damages, but in an amount less than the total listing and selling commissions Carneal sued for. The jury obviously concluded that Carneal was "fired," or, at least, if she quit, she was still entitled to the commissions in the amount awarded.

The jury obviously concluded that Carneal was, to the extent they reduced her claimed damages, not the procuring cause of the gross listing and/or selling commission to which she would otherwise have been entitled to a percentage.

Plaintiff moves the Court to set aside the jury's verdict and enter judgment for the full amount of Carneal's percentages of gross commissions paid to Chesapeake Properties.

The issue is whether the jury, as trier of fact, could have reasonably come to the conclusion they did upon the evidence. The Court, having heard all the evidence and having reviewed pertinent portions of the transcript, will grant the plaintiff's motion and will enter judgment for the full amount due according to the evidence on the eleven transactions.

The reason the Court concludes as it does is because of the testimony of Starr herself. And the Court reminds the parties that the Court specifically told counsel at the conclusion of the evidence and before instructing the jury, that the Court had come to that conclusion but would, nevertheless, allow the jury to decide the case and render the inescapable verdict, or could adjust the verdict if necessary. And so an adjustment is necessary.

Counsel will recall that the Court explained in chambers on the record that plaintiff's objection to evidence of procuring cause put on by defendant was not sustained and the evidence was not excluded in order to avoid the business of endless proffers and in order to allow the defendant a complete presentation to the jury, contrary to the Court's legal conclusions at the time.

As a result of Starr's testimony, the question whether Carneal was the procuring cause of some of the listing or selling commissions ceased to be an issue. Starr testified that her only reason for not paying Carneal was because she does not pay post termination commissions. Starr had admitted that, as to each and every one of the eleven transactions, Carneal was indeed the listing

and/or selling agent. Starr even said that, had Carneal been with Chesapeake Properties when the gross commissions were paid to the brokerage, Carneal would have been paid.

The Court could have decided the case then as a matter of law, and it does so now.

To illustrate further, the Court is aware that one of plaintiff's counsel's wishes was to show that Starr seized upon the personal dispute between the parties in order to justify taking the commissions for herself, especially since one of the eleven transactions was very large, the largest Chesapeake Properties ever had, generating a huge commission. And possibly that was true. On the other hand, one of defendant's counsel's wishes was to show that the huge "Cherrydale" transaction, even if Carneal had brought it into the house, was going sour, and only Starr's creative ingenuity after Carneal was gone saved it and caused it to close. And possibly that was true. However, neither of those possibilities would resolve this case. The Court allowed the jury to consider those matters only to permit defendant to create a record such that this case would not have to be retried under any circumstances.

A trier of fact could not conclude otherwise than Starr's own testimony, that, had Carneal's contract not been terminated, she would have been paid on all the transactions when Chesapeake Properties received its gross commissions. The fact that Starr breached the agent/broker contract (even if such an unconscionable term as "I don't pay post termination commissions" could be enforced) was not only found by the jury, but was inescapable.